UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

CECA, LLC                                                                    PLAINTIFF

v.                                                         Civil No. 3:19-cv-00010-GHD-RP

METAL IMPACT SOUTH, LLC                                              DEFENDANT

## MEMORANDUM OPINION

This matter is before the Court on Defendant Metal Impact South's motion to transfer venue. Doc. 6. Having considered the matter the Court finds that the motion should be granted.

Plaintiff CECA contracted with Metal Impact to manufacture metal parts for CECA. CECA alleges that Metal Impact breached that contract by producing defective parts. CECE brought this breach of contract action in the Circuit Court of Tippah County. Metal Impact timely removed, premising jurisdiction on diversity of citizenship.

Metal Impact now moves to transfer venue to the United States District Court for the Northern District of Illinois. Metal Impact claims that the contract at issue contains an enforceable choice of forum clause designating that court as the venue for all actions arising under the contract. *See* Supply Agreement, Doc. 6-1 at 3, ¶ 13. CECA filed an untimely response, and the matter is now ripe for review

### Forum-selection Law

A party may enforce a forum-selection clause through a motion to transfer venue under 28 U.S.C. § 1404(a). *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 59, 134 S. Ct. 568, 579, 187 L. Ed. 2d 487 (2013). Section 1404(a) provides that "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Traditionally, the court

1

considers "both the convenience of the parties and various public-interest considerations." *Id.* at 62. The Court gives weight to the forum in which the plaintiff chose to initiate the action. Where a valid forum-selection clause exists, however, the court is to give no weight to where the plaintiff chose to sue, *id.* at 63, and to "deem the private-interest factors to weigh entirely in favor of the preselected forums." *Id.* at 64. Thus, "a district court may consider arguments about public-interest factors only." *Id.* Accordingly, unless there are "extraordinary circumstances unrelated to the convenience of the parties," the district court should transfer the case to the court specified in the clause. *Id.* at 62.

### Analysis

Although this is a breach of contract action, CECA did not provide with its complaint a contract between the parties. With its motion, Metal Impact provided a Supply Agreement. Doc. 6-1. The Supply Agreement provides that CECA would agree to purchase all products listed in a schedule attached to the agreement from Metal Impact. The contract contains a choice of law and forum selection clause that provides:

> Choice of Law and Forum. This Agreement shall be deemed to have been made in the State of Illinois and shall be subject to, and be governed by, the laws of the State of Illinois, and no doctrine of choice of law shall be used to apply any law other than that of the State of Illinois. CECA and MIS hereby irrevocably consent and submit to the exclusive jurisdiction of the state courts of Cook County, Illinois, and the federal courts for the Northern District of Illinois, for all matters under or related to this Agreement. The parties hereto further agree that proper service of process on a party may be made on an agent designated by such party in the State of Mississippi or by certified mail, return receipt requested.

*Id.* at 3, ¶ 13. Metal Impact asserts that this provision is a valid forum-selection clause.

CECA's response was filed almost a week after it was due. *See* L.U. Civ. R. 7(b)(4). CECA neither requested an extension of time to file its response nor did it seek permission to file an out of time response. For that reason alone, Metal Impact's motion is granted.

2

Further, CECA's arguments in opposition to transfer are without merit. CECA first contends that the Supply Agreement does not control. This is a breach of contract action. However, CECA has not provided the Court with any other contract between the parties. CECA argues that the Supply Agreement merely controls the price of the parts it orders from Metal Impact and that its cause of action is for a breach in the manufacturing orders it placed.[1] CECA makes the strange argument that Metal Impact does not "produce any goods" but is instead a "manufacturer." Memo. in Resp. Doc. 10 at 6. That argument is obviously wrong. A manufacturer is one who manufactures goods. *See* Miss. Code Ann. § 75-2-105 ("'Goods' means all things (including specially *manufactured* goods) which are movable . . . .") (emphasis added). The Supply Agreement controls the purchase of the parts CECA ordered from Metal Impact. Supply Agreement at 1, ¶ 2 ("CECA shall *purchase* all impact requirements from [Metal Impact] for the products . . . .) (emphasis added).

CECA next argues that the Supply Agreement is a contract of adhesion and that the forum-selection clause is unconscionable. It asserts that Metal Impact presented the Supply Agreement as part of the price list and that CECA did not have an opportunity to negotiate it.

A contract of adhesion is a contract "drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms. Such contracts are usually prepared in printed form, and frequently at least some of their provisions are in extremely small print." *E. Ford, Inc. v. Taylor*, 826 So. 2d 709, 716 (Miss. 2002) (quoting *Bank of Indiana, Nat'l Ass'n v. Holyfield*, 476 F.Supp. 104, 108 (S.D. Miss. 1979) (internal quotation marks omitted). "Contracts of adhesion are not automatically unconscionable." *Caplin Enterprises, Inc. v.*

---

[1] CECA has since moved to amend its complaint, and in its proposed amended complaint, CECA asserts a breach of the warranty contained in the Supply Agreement. CECA thus seemingly concedes that the Supply Agreement is the relevant contract.

*Arrington*, 145 So. 3d 608, 615 (Miss. 2014). "However, such a finding 'makes an argument targeting a provision for a substantive unconscionability review easier to prove . . . . [Thus, it] can make a facially oppressive term presumptively invalid.'" *Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds ex rel. Braddock*, 14 So. 3d 695, 701 (Miss. 2009) (quoting *Vicksburg Partners, L.P. v. Stephens*, 911 So.2d 507, 523 (Miss. 2005)).

CECA presents no evidence that this a contract of adhesion. CECA itself is a business entity, and it does not show how its bargaining position is less than that of Metal Impact. Moreover, were the Supply Agreement a contract of adhesion, CECA does not establish that the clause is unconscionable. "A forum-selection clause is 'unconscionable only where the stronger party's terms are unnegotiable and the weaker party is prevented by market facts, timing or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all.'" *Mount Carmel Ministries v. Seaway Bank & Tr. Co.*, No. 2:14-CV-184-KS-MTP, 2015 WL 13375901, at *2 (S.D. Miss. Sept. 3, 2015) (quoting *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 716 (Miss. 2002)). CECA's only assertion in this regard is that, to find another supplier of parts, CECA would have had to recreate the molds it provided to Metal Impact. However, there is no evidence that CECA was unable to do that. Thus, there is no evidence that the term was unconscionable.

CECA next argues that the forum-selection clause is invalid because forcing CECA to litigate in Chicago is "fundamentally unfair." CECA's citation to *Barnett v. DynCorp International, LLC* defeats its point. 831 F.3d 296 (5th Cir. 2016). To be "fundamentally unfair" the clause must "deprive [CECA] of a remedy. *Id.* at 304. CECA does not show how forcing it to sue in Illinois would deprive it of any remedy.[2]

---

[2] The Fifth Circuit noted in *Barnett* that a even forum-selection clause that provided that an individual would have to sue his former employer in Kuwait would not render the clause so fundamentally unfair that it provided him with no remedy. *Id.* at 308 fn. 14.

4

Finally, CECA argues that the public interest factors favor the Court not enforcing the forum-selection clause. "The public interest factors to be considered by a court when reviewing a claim of *forum non conveniens* are: '(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.'" *Henry v. Covenant Transp. Inc.*, No. 3:13-CV-1926-L, 2014 WL 2217336, at *3 (N.D. Tex. May 29, 2014) (quoting *In re Volkswagen*, 545 F.3d 304, 315 (5th Cir.2008)).

First, CECA argues that judicial economy favors the matter being heard here because the Northern District of Mississippi hears fewer cases than the Northern District of Illinois. That is true. Almost as many people live in Chicago proper as in the entire state of Mississippi. Judicial economy, however, is not determined by the sheer number of cases a particular court hears. What matters is the need "to pursue the same claims in a single action in a single court." *In re Rolls Royce Corp.*, 775 F.3d 671, 679 (5th Cir. 2014). The interest of judicial economy does not weigh against transfer.

CECA also argues that localized interests favor this action staying here because this contract was performed in Mississippi between two Mississippi businesses. Metal Impact, however, is not a Mississippi business, but instead an Illinois LLC. Further, that the cause of action may have arisen in Mississippi is, by itself, no reason to override valid forum-selection clause. *Henry*, 2014 WL 2217336, at *3 (enforcing transfer from a district court in Texas to one in Tennessee where plaintiff had only asserted that "this court has a local interest in considering the case because the alleged acts of discrimination occurred in Texas and Defendant maintains an office in Texas.")

Finally, CECA argues that this Court is more appropriate because Mississippi law will apply to the action, even though a choice of law provision in the Supply Agreement states that Illinois law will apply. CECA argues that Mississippi law will apply because the clause providing for Illinois law was not set apart from others and is therefore likely invalid.

5

CECA cites no law that requires a choice of law provision to be set apart to be enforceable, and in any case, CECA's assertion is patently false. The choice of law provision and the forum-selection clause are set in a separated paragraph, its titled underlined: "13. <u>Choice of Law and Forum</u>". Supply Agreement at 3, ¶ 13. Further, the "Terms and Conditions" attachment to the Supply Agreement also contains a choice of law provision and its title is both bolded and underlined. *Id.* at 11, ¶ 32. The public interest factors do not weigh against transfer.

## Conclusion

CECA and Metal Impact entered into an agreement that contains a valid forum-selection clause. CECA has not shown that the public interest factors outweigh enforcing that clause. Accordingly, Metal Impact's motion to transfer venue is granted, and this cause will be transferred to the United States District Court for the Northern District of Illinois.

An order in accordance with this opinion shall issue.

This, the 18th day of March 2019.

*[signature]*
SENIOR U.S. DISTRICT JUDGE